## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| CHAIM ROSENFELD, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| v. | ) ) | **CLASS ACTION** **COMPLAINT** |
| ST. JUDE MEDICAL, INC., JOHN W. BROWN, RICHARD R. DEVENUTI, DAVID C. DVORAK, STUART M. ESSIG, BARBARA B. HILL, MICHAEL A. ROCCA, MICHAEL T. ROUSSEAU, DANIEL J. STARKS, STEFAN K. WIDENSOHLER and WENDY L. YARNO, | ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants, | ) | |

Plaintiff Chaim Rosenfeld ("Plaintiff"), by his undersigned counsel, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

### NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff, a holder of common stock of St. Jude Medical, Inc. ("St. Jude" or the "Company"), brings this action against the Company and the members of the Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and seeking relief for the defendants' breaches of state disclosure law arising out of the Board's agreement to sell the Company to Abbott Laboratories ("Abbott") through its wholly owned subsidiaries, Vault Merger Sub, Inc. ("Merger Sub 1") and Vault Merger Sub, LLC ("Merger Sub 2") (the "Proposed Transaction").

2.     On April 28, 2016, St. Jude and Abbott issued a joint press release announcing entry into an Agreement and Plan of Merger dated April 27, 2016 (the "Merger Agreement") to sell St. Jude to Abbott, whereby St. Jude shareholders will receive $46.75 in cash and 0.8708 shares of Abbott common stock for each share of St. Jude common stock they own (the "Merger Consideration").   According to the joint press release, the Merger Consideration is purportedly valued at $85.00 per share, based on Abbott's 5-day volume weighted average share price of $43.93 as of April 26, 2016.  The Proposed Transaction is purportedly valued at approximately $25 billion.

3.     The Proposed Transaction is the product of a hopelessly flawed single bidder "process" that was designed to ensure the sale of St. Jude to Abbott, without the Board having conducted a market check to test the sale value of the Company.  Following the flawed sale process, the Board agreed to lock up the deal with a number of coercive deal protection devices in the Merger Agreement, including: (i) a "no-solicitation" clause that prevents the Company from soliciting, and subject to minimal exceptions, from providing non-public information to potential alternate bidders;  (ii) a "information rights" provision that requires the Company to advise Abbott within twenty-four (24) hours of any proposal or inquiries received from other parties, including the material terms and conditions of the proposal and the identity of the party making the proposal; (iii) "matching rights" that allow Abbott five (5) calendar days to match any superior offer, plus the longer of (a) two (2) calendar days and (b) the amount of time remaining in the five (5) calendar day period following a material amendment to the terms and conditions of a superior offer; and (iv) a provision requiring St. Jude to pay a termination fee of $685 million if the Company decides

to pursue a competing offer.  The collective effect of these provisions is to chill any potential post-deal market check.

4.      On June 13, 2016, Abbott filed a Form S-4 Registration Statement with the U.S. Securities and Exchange Commission ("SEC") (the "Registration Statement") that omitted or misrepresented material information regarding the Proposed Transaction in violation of Sections 14(a) and 20(a) of the Exchange Act and in contravention of the Individual Defendants' disclosure duties under state law.  The Registration Statement failed to disclose material information regarding: (i) the process by which the Board entered into the Proposed Transaction; (ii) the key data and inputs underlying the financial valuation analyses that purport to support the fairness opinion ("Fairness Opinion") provided to the Board by its financial advisor, Guggenheim Securities, LLC ("Guggenheim"); and (iii) certain financial projections prepared by St. Jude and relied upon by Guggenheim in issuing its Fairness Opinion regarding the Proposed Transaction.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction until such time as defendants provide all material information critical for a fairly and fully informed shareholder vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' Exchange Act violations and state law disclosure violations.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act.  This Court also has supplemental jurisdiction pursuant to 28

U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      This Court has jurisdiction over defendants because St. Jude is incorporated and headquartered in Minnesota and each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9.      Plaintiff is, and was all times relevant hereto, a shareholder of St. Jude.

10.     Defendant St. Jude is a Minnesota corporation with its principal executive offices located at One St. Jude Medical Drive, St. Paul, Minnesota 55117. Founded in 1976, St. Jude is a global medical technology corporation with 18,000 employees in 40 countries. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "STJ."

11.     Defendant John W. Brown ("Brown") has been a director of the Company since August 2005. Defendant Brown is Chairman of the Governance and Nominating Committee.

12.     Defendant Richard R. Devenuti ("Devenuti") has been a director of the Company since October 2001. Defendant Devenuti is a member of the Audit Committee.

13.     Defendant David C. Dvorak ("Dvorak") has been a director of the Company since August 2015.  Defendant Dvorak is a member of the Governance and Nominating Committee.

14.     Defendant Stuart M. Essig ("Essig") has been a director of the Company since March 1999.  Defendant Essig is Chairman of the Compensation Committee and a member of the Governance and Nominating Committee.

15.     Defendant Barbara B. Hill ("Hill") has been a director of the Company since December 2007.  Defendant Hill is a member of the Compensation Committee.

16.     Defendant Michael A. Rocca ("Rocca") has been a director of the Company since March 2004.  Defendant Rocca is Chairman of the Audit Committee.

17.     Defendant Michael T. Rousseau ("Rousseau") has been President, Chief Executive Officer ("CEO") and a director of the Company since January 2016.  Defendant Rousseau previously served as Chief Operating Officer ("COO") of the Company from January 2014 to December 2015.

18.     Defendant Daniel J. Starks ("Starks") has been a director of the Company since April 1996 and became Executive Chairman of the Board in January 2016.  Defendant Starks previously served as Chairman of the Board, President and CEO of the Company from May 2004 to December 2015.

19.     Defendant Stefan K. Widensohler ("Widensohler") has been a director of the Company since July 2013.  Defendant Widensohler previously served as a director of the Company from 2001 to 2010.  Defendant Widensohler is a member of the Audit Committee.

20.     Defendant Wendy L. Yarno ("Yarno") has been a director of the Company since February 2002.  Defendant Yarno is a member of the Compensation Committee and the Governance and Nominating Committee.

21.     Defendants Brown, Devenuti, Dvorak, Essig, Hill, Rocca, Rousseau, Starks, Widensohler and Yarno are collectively referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

22.     Abbott is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.  Abbott has a broad range of branded generic pharmaceuticals, medical devices, diagnostics and nutrition products.  Abbott's common stock is traded on the New York Stock Exchange under the ticker symbol "ABT."

23.     Merger Sub 1 is a Delaware corporation and a wholly-owned subsidiary of Abbott.

24.     Merger Sub 2 is a Delaware limited liability company and a wholly-owned subsidiary of Abbott.

### CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of the common stock of St. Jude, and their successors in interest, who have been and will be harmed by the wrongful conduct of the defendants as alleged herein (the "Class").  The Class excludes defendants, and any person, firm, trust, corporation or other entity related to, affiliated with, or controlled by any of the defendants, as well as the immediate families of the Individual Defendants.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable.  As of April 25, 2016, the total number of issued and outstanding St. Jude shares was 284,004,177. Members of the Class are scattered throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

28.     Questions of law and fact exist that are common to the Class and predominate over questions affecting any individual Class member, including, among others:

(a)     whether defendants have violated Section 14(a) of the Exchange Act;

(b)     whether the Individual Defendants have violated Section 20(a) of the exchange Act;

(c)     whether the defendants breached their fiduciary duty of disclosure with respect to Plaintiff and the other members of the Class and violated applicable Minnesota statutes as a result of the conduct alleged herein; and

(d)     whether Plaintiff and the Class would suffer irreparable injury were they required to vote on the Proposed Transaction without receiving the material information set forth below and the Proposed Transaction is consummated as presently anticipated;

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or

adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

31.    Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

**Company Background and its Strong Financial Outlook**

32.    St. Jude is a global medical device company with more than 20 principal operations and manufacturing facilities worldwide and products sold in more than 100 countries.  The Company's major markets include the United States, Europe, Latin America and Asia-Pacific.  St. Jude was founded in 1976, had an initial public offering in 1977, and has been listed in the Fortune 500 every year since 2000.

33.    The Company manufactures implantable cardioverter-defibrillators ("ICD"), pacemakers, electrophysiology catheters, vascular closure products, cardiac mapping and visualization systems, optical coherence tomography ("OCT") imaging systems, structural heart repair products and neurostimulation devices.  St. Jude's operations are divided into two divisions: research and development, and manufacturing and supply chain.

34.    St. Jude also operates six technology centers located in Brussels, Beijing, Tokyo, Austin, St. Paul and Sylmar, California.  The technology centers offer training to physicians and allow them to simulate patient procedures using the Company's devices and technologies.

35.    Since 1994, the Company has expanded through the acquisition of a number of

companies and individual units.   St. Jude's notable acquisitions included Tyco International's Angio-Seal division in 1999, Getinge Group's heart pump technology division in 2014, and Thoratec Corporation in 2015.

36.     St. Jude has also undertaken joint ventures, notably its "Choice Alliance" joint venture with Abbott.  Following an initial agreement that began in 2008, St. Jude and Abbott announced the Choice Alliance joint venture on April 23, 2012.  Choice Alliance is a multi-year joint initiative that includes Abbott's leading coronary and endovascular product portfolios, as well as St. Jude's portfolio of electrophysiology, cardiac rhythm management and cardiology technologies.  Both companies agreed to endorse each other's products to their respective customers, and Abbott received the rights to promote St. Jude's RadiAnalyze Xpress Measurement System and the ILUMIEN PCI Optimization System.

37.     The Company's recent financial results underscore its promising prospects.  On October 21, 2015, the Company announced its third quarter ("3Q") 2015 financial earnings, including adjusted net earnings of $277 million, or $0.97 per share, not including any benefit from the federal research and development tax credit, which had not yet been extended for 2015.   Net sales were $1.339 billion, an increase of approximately 6% year over year. Worldwide neuromodulation revenue increased by approximately 19% on a constant currency basis, marking the fifth consecutive quarter of sales acceleration on a year over year basis.

38.     Commenting on the 3Q 2015 financial results, defendant Starks stated:

Third quarter results confirm that our innovation based growth program continues to gain traction. Now we are focused on efficiently integrating our acquisition of Thoratec and strengthening our entire portfolio of growth drivers for 2016.

39.     The Company continued on its path towards long term growth, reporting its fourth quarter ("4Q") and full-year 2015 financial earnings on January 27, 2016. St. Jude reported 4Q 2015 net earnings of $113 million, or $0.39 per share. For the quarter, adjusted net earnings per share of $1.02 increased 11% on a constant currency basis year over year. For the full year, the Company reported net earnings of $880 million, or $3.07 per share. Adjusted net earnings for the full year 2015 were $1.128 billion or $3.94 per share.

40.     During St. Jude's earnings conference call, defendant Rousseau commented on the 4Q and full-year 2015 financial results:

> Fourth quarter sales were over 1.4 billion with strong growth in both AF and neuromodulation, as well as in to our recently acquired Thoratec mechanical circulatory support business. The Thoratec acquisition was the largest in our history, and we are pleased with both the integration efforts and sales momentum to date.

> At the beginning of 2015, we said that our success would depend on performance in AF, neuromodulation and CardioMEMS. As we close out the year, we achieved success in two of those three areas. We still have work to do to grow our CardioMEMS business. While it is on track from the perspective of patient care, physician demand and economic impact, the technology remains under pressure from a reimbursement standpoint.

> Going in to 2015, we were well positioned to grow EPS faster than sales and we delivered this by growing adjusted EPS by 11% on a year-over-year basis with 2015 revenue growth of approximately 4%, and above market growth in key areas including AF and neuromodulation.

41.     On April 20, 2016, the Company announced its first quarter ("1Q") 2016 financial results. St. Jude reported 1Q 2016 net earnings of $95 million or $0.33 per share. Excluding net after-tax charges relating to acquisition-related costs and other items, adjusted net earnings were $259 million, or $0.90 per share. Net sales were $1.448 billion, an 8% increase year over year.

42.     Commenting on the 1Q 2016 financial results, defendant Rousseau stated:

In the first quarter, we delivered sales and adjusted earnings per share at or above the high end of our guidance. With 10 product approvals and associated launches in key regions around the world, we demonstrated our commitment to bringing lifesaving products to patients while driving sales momentum in the areas of atrial fibrillation, heart failure and neuromodulation.

**The Incomplete and Flawed Sale Process**

43.      During a December 15, 2015 meeting to discuss St. Jude and Abbott's ongoing strategic marketing alliance and introductory meeting between Abbott's CEO, Miles D. White ("White"), and defendant Rousseau, White indicated an interest in discussing a potential business combination between Abbott and St. Jude.

44.      On December 29, 2015, the Board held a telephonic meeting to discuss the Company's annual operating plan.  During the meeting, the Board requested that Guggenheim provide the Board with financial information pertaining to St. Jude and Abbott and potential strategic alternatives in the event that Abbott presented a proposal regarding a possible business combination.

45.      During the first week of January 2016, White contacted defendant Starks regarding a possible business combination between St. Jude and Abbott.  White and Starks further discussed the possible business combination by telephone on January 21, 2016, and met on January 23, 2016 in-person.

46.      On February 19, 2016, the Board held a meeting during which Guggenheim provided certain financial information pertaining to St. Jude and Abbott and discussed potential strategic options, including continuing to execute on its standalone business plan, potential acquisitions, potential divestitures and potential business combinations.  The Board considered, with input from St. Jude's management and Guggenheim, parties that could potentially have the financial resources and strategic interest to pursue a business

combination with St. Jude and the likelihood that any of such parties would be able to acquire St. Jude on attractive terms. After discussion, the Board concluded that there would not be any companies other than Abbott that would have the strategic and financial interest and resources to acquire St. Jude on attractive terms.

47.     On February 23, 2016, White called defendant Starks to communicate a preliminary indication of interest for Abbott to acquire the Company for $83.00 per St. Jude share, with the consideration consisting of 60% cash and 40% Abbott shares, subject to certain conditions.

48.     On February 26, 2016, the Board held a telephonic meeting during which Abbott's proposal was discussed. The Board authorized Company management to engage in negotiations with Abbott regarding its proposal, and to enter into a confidentiality agreement with Abbott and provide confidential information to Abbott and its advisors. Abbott and St. Jude entered into a confidentiality agreement on February 28, 2016.

49.     On February 29, 2016, members of management of Abbott and St. Jude met to discuss a potential strategic transaction. During the meeting, members of St. Jude's management delivered a presentation relating to the Company's business, including financial information and an overview of St. Jude's operations. Abbott commenced its initial due diligence review on March 1, 2016.

50.     On March 13, 2016, Abbott updated its proposal to acquire the Company for $84.00 per St. Jude Share, with consideration consisting of 60% cash and 40% Abbott shares, subject to certain conditions.

51.     On March 15, 2016, the Board held a telephonic meeting during which the terms of Abbott's updated proposal were discussed. The Board authorized St. Jude

management to make a counterproposal to Abbott at an indicative value of $85.00 per share, based on a mix of cash and stock as outlined by Abbott. The next day, defendant Starks communicated the counterproposal to White, who agreed to proceed with an exploration of a possible transaction on the counteroffer's terms.

52. On April 6, 2016, Abbott's legal counsel delivered an initial draft of the merger agreement that contained a number of provisions that St. Jude viewed as highly problematic. Among the problematic issues were provisions that would allow Abbott to terminate its obligation to complete the transaction in various circumstances and the size of the proposed termination fee. From April 10 through April 16, 2016, the parties and their legal advisors engaged in substantial negotiations regarding the terms of the draft merger agreement.

53. On April 10, 2016, the Board held a telephonic meeting to consider and discuss the Proposed Transaction. The Board reviewed discussions with Abbott to date, and received an update on the status of the due diligence process and the timing and scope of reverse due diligence on Abbott.

54. On April 12, 2016, Abbott proposed an adjustment to the mix of consideration, such that the ratio of the consideration would be 55% in cash and 45% in Abbott shares. On April 16, 2016, the Board held a telephonic meeting during which defendant Starks communicated to the Board the status of discussions between the parties and certain unresolved points in the draft merger agreement and the preliminary results of reverse due diligence.

55. On April 25, 2016, the Board held a telephonic meeting to consider and discuss the Proposed Transaction. The Board specifically discussed the proposed consideration ratio

of 55% in cash and 45% in Abbott shares, as well as provisions regarding the Company's ability to accept superior proposals and the size of the termination fee.

56.     In final discussions on April 27, 2016, defendant Starks and White agreed that the termination fee would be equal to approximately 2.75% of St. Jude's equity value.

57.     Also on April 27, 2016, the Board held a telephonic meeting during which Guggenheim provided its fairness opinion to the Board.  The parties subsequently executed the Merger Agreement and approved cash gross-up payments to certain executives, including the Company's named executive officers, to cover any excise tax that results in connection with the Proposed Transaction.

**The Proposed Transaction is Inadequate**

58.     On April 27, 2016, following the Board's approval, St. Jude entered into the Merger Agreement with Abbott for inadequate consideration.  The next day, St. Jude and Abbott issued a joint press release stating, in relevant part:

> ABBOTT PARK, Ill. and ST. PAUL, Minn., April 28, 2016 -- Abbott (NYSE: ABT) and St. Jude Medical, Inc. announced today a definitive agreement for Abbott to acquire St. Jude Medical, creating a premier medical device leader with top positions in high-growth cardiovascular markets, including atrial fibrillation, structural heart and heart failure as well as a leading position in the high-growth neuromodulation market. Under the agreement, St. Jude Medical shareholders will receive $46.75 in cash and 0.8708 shares of Abbott common stock, representing total consideration of approximately $85 per share. At an Abbott stock price of $43.93(2), this represents a total transaction equity value of $25 billion. The combined company will have an industry-leading pipeline expected to deliver a steady stream of new medical device products across cardiovascular, diabetes, vision and neuromodulation patient care.
>
> * * *
>
> Financial Impact of Transaction
> The acquisition of St. Jude Medical is expected to be accretive to Abbott's adjusted earnings per share in the first full year after closing and increasing thereafter, with approximately 21 cents of accretion in 2017 and 29 cents in

2018.(1) The combination is anticipated to result in annual pre-tax synergies of $500 million by 2020, including both sales and operational benefits. One-time deal-related costs and integration costs will be provided at a future date.

St. Jude Medical's net debt of approximately $5.7 billion will be assumed or refinanced by Abbott. Abbott intends to fund the cash portion of this transaction with medium- and long-term debt.

The transaction, which has been approved by the boards of directors of St. Jude Medical and Abbott, is subject to the approval of St. Jude Medical shareholders and the satisfaction of customary closing conditions, including specified regulatory approvals. The transaction is expected to close in the fourth quarter of 2016.

59.     Analysts have praised the deal for Abbott.  For example, in an April 28, 2016 *Bloomberg* article addressing the Proposed Transaction, BMO Capital Markets analyst Joanne Wuensch stated that "[i]n an industry where a larger portfolio is increasingly important, Abbott just built a real medtech franchise."  Wuensch continued: "there is…a real opportunity for cross-selling."  Bloomberg Intelligence analyst Jonathan Palmer elaborated:

With St. Jude, [Abbott is] gaining complementary products like pacemakers, heart valves and devices to treat atrial fibrillation. There is an obvious hole in the medical device business, specifically around cardiovascular products, and St. Jude is the perfect fit to fill that gap.

60.     An April 29, 2016 *Barron's* article titled "Analysts Split on Abbott Lab's Purchase of St. Jude" quoted Wells Fargo Senior Analyst Larry Biegelsen discussing expected synergies following the Proposed Transaction:

We have always believed ABT's and STJ's medical device businesses should be combined because (1) there is very little overlap; (2) the two businesses are very complementary; and (3) the combined businesses can compete more effectively with MDT and BSX in the cardiovascular device space because MDT and BSX currently have broader portfolios than ABT and STJ on their own.

61.     In an investor presentation filed with the SEC on April 28, 2016, Abbott and St. Jude explained how the combination of the companies would create "a premier medical

device leader," as seen in the following slide:



62.     During an April 28, 2016 conference call, White elaborated on the benefits

Abbott expects to realize from the Proposed Transaction:

> Together we will compete in nearly every area of the cardiovascular device
> market … The value of having breadth in your product lines, the changing
> way the health care community has consolidated or purchases or selects
> products, all those factors come to a point over time where the strategic value
> of Abbott and St. Jude coming together becomes compelling.

63.     The April 28, 2016 joint press release further detailed the benefits Abbott

expects to realize from the Proposed Transaction:

> St. Jude Medical's strong positions in heart failure devices, atrial fibrillation
> and cardiac rhythm management complement Abbott's leading positions in
> coronary intervention and transcatheter mitral repair. Together, the company
> will compete in nearly every area of the cardiovascular market and hold the
> No. 1 or 2 positions across large and high-growth cardiovascular device
> markets. This best-in-class combined portfolio will have the depth, breadth

and innovation to help patients restore their health, reduce costs for payors and deliver greater value to customers.

\* \* \*

The acquisition of St. Jude Medical will advance Abbott's strategic and competitive positions:

**Aligned with healthcare and demographic trends:** Cardiovascular medical devices are important tools to address the growing health and economic burden of cardiovascular disease (CVD). In the U.S. alone, more than 40 percent of adults are expected to have one or more forms of CVD by 2030. The combined business will have one of the broadest portfolios of devices and an industry-leading pipeline to help healthcare systems provide better care for patients while increasing efficiencies and reducing costs.

**Leadership positions in core businesses:** With combined annual sales of approximately $8.7 billion, Abbott's cardiovascular business and St. Jude Medical will hold the No. 1 or 2 positions across large and high-growth cardiovascular device markets and will compete in nearly every area of the market – with an aggregate market opportunity of $30 billion.

**Well-managed diversity to deliver reliable, sustainable growth:** St. Jude Medical further diversifies and enhances sources of future growth for Abbott – the combined pipelines are expected to bring numerous new medical device products to key markets this year, including:

**St. Jude Medical's** EnSite Precision™ next-generation cardiac mapping system used to visualize and navigate catheters in the heart during ablation procedures; first-to-market MultiPoint™ Pacing technology advances quadripolar technology and provides additional options for cardiac resynchronization therapy patients who are not responsive to other pacing options; Proclaim™ Elite recharge-free Spinal Cord Stimulation System and Prodigy™ Chronic Pain System, which are used for treating chronic pain and are MRI safe, upgradeable, and feature its proprietary Burst technology.
**Abbott's** FreeStyle® Libre, a sensor-based glucose monitoring system for people with diabetes that eliminates routine finger sticks; Tecnis® Symfony, a first-in-kind continuous range of vision intraocular lens for the treatment of people with cataracts; and Absorb™, the world's first bioresorbable coronary stent.

**Strong positions in the world's largest and fastest-growing geographies:** St. Jude Medical has strong and leading positions around the world, strengthening Abbott's global scale, infrastructure and capabilities.

**The Individual Defendants' Self-Interest in the Proposed Transaction**

64.     St. Jude insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public shareholders.  The Board and the Company's executive officers are conflicted and will receive unique benefits from the Proposed Transaction not available to Plaintiff and the public shareholders of St. Jude.

65.     While St. Jude's public shareholders are being cashed out for an inadequate price and foreclosed from participating in the future growth of St. Jude, in connection with the merger the Company's directors and officers will achieve a substantial payday.

66.     St. Jude's directors and officers will receive substantial cash consideration for their significant holdings of St. Jude stock.  By pursuing and approving the Proposed Transaction, St. Jude's directors and officers will gain liquidity for their otherwise illiquid St. Jude holdings.  The St. Jude stock holdings for the Company's directors and executive officers were disclosed in the Registration Statement, as seen in the following chart:

| Name of Beneficial Owner | Amount and Nature of Beneficial Ownership | | | |
| --- | --- | --- | --- | --- |
| | Number of St. Jude Medical Shares Held June 2, 2016 [1] | Vested Stock Options, and RSUs, Restricted Stock and Stock Options of St. Jude Medical that are expected to vest within 60 days of June 2, 2016 | Total Beneficial Ownership of St. Jude Medical Shares | Percent of Class |
| John W. Brown | 206,295 | -0- | 206,295 | * |
| Richard R. Devenuti | 43,308 | 47,950 | 91,258 | * |
| David C. Dvorak | 5,599 | -0- | 5,599 | |
| Stuart M. Essig | 48,777 | 47,950 | 96,727 | * |
| Barbara B. Hill | 32,863 | 47,950 | 80,813 | * |
| Michael A. Rocca | 28,938 | 47,950 | 76,888 | * |
| Michael T. Rousseau | 31,484 | 1,030,468 | 1,061,952 | * |
| Daniel J. Starks | 6,128,215 | 2,427,787 | 8,556,002(1) | 3.0% |
| Stefan K. Widensohler | 34,966 | 12,250 | 47,216 | * |
| Wendy L. Yarno | 30,240 | 47,950 | 78,190 | * |
| Eric S. Fain | 79,954 | 810,169 | 890,123 | * |
| Denis M. Gestin | 27,775 | 147,228 | 175,003 | |
| Donald J. Zurbay | 19,284 | 186,878 | 206,162 | * |
| Directors and Executive Officers of St. Jude Medical as a Group (24 persons) | 7,015,708 | 6,581,368 | 13,597,076 | 4.8% |

67. Further, defendants Rousseau and Starks and three other named executive officers stand to receive significant change-in-control payments. According to the Registration Statement, defendant Starks stands to receive over $19 million in golden parachute compensation. Defendant Rousseau stands to receive over $13.6 million in golden parachute compensation. Moreover, St. Jude's named executive officers collectively stand to receive a total of over $55.26 million in golden parachute payments, as detailed in the chart below:

**Termination Following a Change in Control**

| Named Executive Officer | Cash Payments(1) | | Equity Awards for Which Vesting Would Have Accelerated(2) | | |
| | Salary and Bonus Related Payments ($) | Healthcare Benefits ($) | "In the Money" Value of Options ($) | Value of Restricted Stock Units ($) | Total ($) |
|---|---|---|---|---|---|
| Daniel J. Starks | 12,692,600 | 49,766 | 2,816,017 | 3,518,867 | 19,077,250 |
| Michael T. Rousseau | 7,603,731 | 54,671 | 1,851,443 | 4,096,648 | 13,606,493 |
| Eric S. Fain | 5,371,670 | 41,567 | 1,109,895 | 1,680,947 | 8,204,079 |
| Denis Gestin | 5,188,678 | 59,599 | 1,068,207 | 1,586,315 | 7,902,799 |
| Donald J. Zurbay | 4,258,820 | 54,671 | 602,219 | 1,558,395 | 6,474,105 |

68. Company insiders stand to receive significant benefits and thus have reason to support the Proposed Transaction, which is otherwise against the best interests of the Company's shareholders.

**The Unfair Deal Protection Devices**

69. The Merger Agreement contains deal protection devices which substantially increase the likelihood that the Proposed Transaction will be consummated, leaving St. Jude's public shareholders with no meaningful change of control premium for their shares. When viewed collectively, these provisions, which are detailed below, further the interests of Abbott, certain Individual Defendants and other St. Jude insiders to the detriment of St. Jude's public shareholders and cannot represent a justified, appropriate or proportionate response to any threat posed by a potential third party bidder.

70.     The Individual Defendants have agreed to the following unreasonable deal protection devices:

- A "no-solicitation" clause that prevents St. Jude from soliciting, or its directors and officers from even participating in discussions which may lead to a superior proposal from any bidder (Merger Agreement, Section 8.03(a));

- A "information rights" provision that requires the Company to advise Abbott within twenty-four (24) hours of any proposal or inquiries received from other parties, including the material terms and conditions of the proposal and the identity of the party making the proposal (Merger Agreement, Section 8.03(c));

- A "matching rights" provision that requires the Company to provide Abbott with the identity of any competing bidders, as well as the material terms of any competing offer, and allow Abbott five (5) calendar days to match any superior offer, plus the longer of (a) two (2) calendar days and (b) the amount of time remaining in the five (5) calendar day period following a material amendment to the terms and conditions of a superior offer.  (Merger Agreement, Section 8.03 (b)); and

- A termination fee of $685 million payable by the Company to Abbott if St. Jude decides to pursue a competing bid (Merger Agreement, Section 10.03).

71.     The "no-solicitation" clause, the "information rights" provision, the "matching rights" provision, and the termination fee unfairly restrain the Individual Defendants' ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or

a significant interest in the Company.  The circumstances under which the Board may respond to a third party's written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

72.    The reason behind these deal protection devices is clear: the absence of a meaningful premium for shareholders creates the very real potential that a third party bidder will attempt to usurp Abbott and submit a higher bid for St. Jude.  The possibility that a third-party bidder will emerge motivated Abbott to "lock-up" the Proposed Transaction by co-opting the Board and forcing them to adopt unreasonable deal protection devices that would ensure that Abbott could purchase the Company for less than would otherwise be possible.

73.    Taken as a whole, the foregoing deal protection devices essentially foreclose the possibility that a third-party "white knight" could step forward to provide St. Jude shareholders with a premium for their shares, instead of the opportunistic and inadequate compensation offered by the Proposed Transaction.

**The Materially Misleading Registration Statement**

74.    In order to secure shareholder approval of the unfair Proposed Transaction, defendants filed the false and materially misleading Registration Statement.  The Registration Statement misrepresents and/or omits material information necessary for St. Jude shareholders to make an informed decision whether to vote in favor of the Proposed Transaction.  Specifically, as set forth below, the Registration Statement fails to provide Company shareholders with material information and/or provides them with materially misleading information concerning (i) certain financial projections relied upon by

Guggenheim in issuing its Fairness Opinion regarding the Proposed Transaction; (ii) the key data and inputs underlying the financial valuation analyses that purport to support the Fairness Opinion provided to the Board by Guggenheim; and (iii) the process by which the Board entered into the Proposed Transaction.

75.      The Registration Statement fails to disclose the St. Jude Medical Forecast provided by St. Jude's senior management, on page 75 of the Registration Statement, which were relied upon by Guggenheim for purposes of its analysis, for years 2016-2020, for the following items: (i) EBIT (or D&A); (ii) taxes (or tax rate); (iii) capital expenditures; (iv) changes in net working capital; (v) stock-based compensation expense; and (vi) unlevered free cash flow.

76.      The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)      from pages 75 of the Registration Statement:

### Summary of St. Jude Medical Projections

| | Fiscal Year | | | | |
|---|---|---|---|---|---|
| | **2016E** | **2017E** | **2018E** | **2019E** | **2020E** |
| | **(in millions, except per share amounts; all amounts are approximations)** | | | | |
| Revenue | $   6,151 | $   6,729 | $   7,358 | $   8,047 | $   8,869 |
| Gross Profit | 4,281 | 4,693 | 5,138 | 5,625 | 6,204 |
| EBITDA[(1)] | 1,898 | 2,059 | 2,242 | 2,456 | 2,695 |
| Adjusted EBITDA[(2)] | 1,823 | 1,979 | 2,157 | 2,364 | 2,595 |
| Cash Earnings Per Share[(3)] | $   4.13 | $   4.62 | $   5.18 | $   5.79 | $   6.46 |

(1) Defined as net earnings before interest expense, income taxes, depreciation, amortization and certain income and expenses and excludes impact of stock-based compensation expense.

(2) Defined as net earnings before interest expense, income taxes, depreciation, amortization and certain income and expenses and includes impact of stock-based compensation expense.

(3) Excludes impact of amortization expense and certain income and expenses.

77.     These statements in the Registration Statement are rendered false and/or misleading by the omissions identified in ¶75 as this information is integral to shareholders' evaluation of the consideration being offered in the Proposed Transaction.  Indeed, these financial projections provide a sneak peek into St. Jude's expected future performance (i.e., growth/profitability) and, consequently, its value as a standalone entity.  Moreover, these projections were utilized by Guggenheim in performing their financial analysis and the unlevered free cash flow figures were the key input into Guggenheim's discounted cash flow analysis.  Moreover and importantly, these projections are more reliable than similar forecasts prepared by third-party analysts and other non-insiders as it comes from members of corporate management who have their fingers on the pulse of the Company.  Accordingly, it is no surprise that financial projections are among the most highly sought after disclosures by shareholders in the context of corporate transactions such as this.

78.     The Registration Statement further fails to disclose the Abbott Analyst Forecast as discussed with Abbott's and St. Jude's respective senior management, which were relied upon by Guggenheim for purposes of its analysis, for years 2016-2020, for the following items: (i) revenue; (ii) gross profit; (iii) EBITDA; (iv) adjusted EBITDA; (v) taxes (or tax rate); (vi) cash earnings per share; (vii) capital expenditures; (viii) changes in net working capital; (ix) stock-based compensation expense; and (x) unlevered free cash flow.

79.    The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)    from page 69 of the Registration Statement:

*Illustrative Discounted Cash Flow Analysis.*    Guggenheim Securities performed an illustrative stand-alone discounted cash flow analysis of Abbott based on projected unlevered free cash flows (after deduction of stock-based compensation) for Abbott and an estimate of its terminal/continuing value at the end of the projection horizon derived from the Abbott Analyst Forecast for the five-year period ending December 31, 2020.

(b)    from page 71 of the Registration Statement:

*Illustrative Theoretical Future Stock Price.*    Guggenheim Securities reviewed implied illustrative ranges of theoretical future values per share, during the period January 1, 2017 through January 1, 2020, of (i) Abbott common stock, pro forma for the mergers, utilizing, in the case of Abbott, the Abbott Analyst Forecast and, in the case of St. Jude Medical, both the St. Jude Medical Forecast and Wall Street equity research estimates and (ii) the St. Jude Medical common stock, on a stand-alone basis, utilizing both the St. Jude Medical Forecast and Wall Street equity research estimates. For purposes of evaluating Abbott common stock pro forma for the mergers, Abbott's contemplated financing to be undertaken in connection with the mergers, the Estimated Incremental Financial Impacts and Abbott's projected dividend payments during the forecasted period were taken into account and the cash portion of the per share merger consideration was assumed to be invested in five-year U.S. Treasury notes with an annual interest rate of 1.4%. The illustrative theoretical future per share values were discounted to present value (as of April 26, 2016) utilizing an estimated cost of equity of 9.2% (the approximate midpoint of Abbott's and St. Jude Medical's respective estimated cost of equity). This indicated the following overall illustrative theoretical future values per share, on a present value basis as of April 26, 2016, for Abbott common stock on a pro forma basis and St. Jude Medical common stock on a stand-alone basis:

•      for Abbott common stock, approximately $91.24 to $99.67 per share (based on Abbott's implied 2016E Cash P/E multiple of 20.2x as of April 26, 2016 and the St. Jude Medical Forecast), approximately $90.81 to $97.71 per share (based on Abbott's implied 2016E Cash P/E multiple of 20.2x as of April 26, 2016 and Wall Street equity research estimates for St. Jude Medical) and

approximately $88.28 to $94.93 per share (based on Abbott's implied two-year average NTM Cash P/E multiple of 19.0x as of April 26, 2016 and Wall Street equity research estimates for St. Jude Medical); and

- for St. Jude Medical common stock, approximately $69.54 to $77.37 per share and approximately $66.34 to $67.11 per share based on the St. Jude Medical Forecast and Wall Street equity research estimates, respectively, in each case based on St. Jude Medical's implied two-year average NTM Cash P/E multiple of 16.0x as of April 26, 2016.

(c)   from pages 71-72 of the Registration Statement:

*Illustrative Value-Based Has/Gets.*   Guggenheim Securities compared the implied intrinsic value of St. Jude Medical on a stand-alone basis based on the illustrative discounted cash flow analyses for St. Jude Medical described above relative to the implied intrinsic value of the pro forma combined company resulting from the mergers after taking into account, to the extent described below, the Estimated Incremental Financial Impacts based on the illustrative discounted cash flow analyses for St. Jude Medical described above and the illustrative discounted cash flow analysis for Abbott described above. This indicated the following implied per share equity values for St. Jude Medical on a stand-alone basis relative to the pro forma combined company:

- utilizing the St. Jude Medical Forecast and the Abbott Analyst Forecast for purposes of the discounted cash flow analyses referred to above, approximately $74.19 to $113.93 per share (in the case of St. Jude Medical on a stand-alone basis), approximately $80.47 to $104.33 per share (in the case of the pro forma combined company after taking into account Abbott's contemplated financing to be undertaken in connection with the mergers) and approximately $82.72 to $107.89 per share (in the case of the pro forma combined company after taking into account the Estimated Incremental Financial Impacts); and

- utilizing Wall Street equity research estimates for St. Jude Medical and the Abbott Analyst Forecast for purposes of the discounted cash flow analyses referred to above, approximately $57.50 to $88.95 per share (in the case of St. Jude Medical on a stand-alone basis), approximately $78.09 to $100.74 per share (in the case of the pro forma combined company after taking into account Abbott's contemplated financing to be undertaken in connection with the mergers) and approximately $80.35 to $104.30 per share (in the

- 25 -

case of the pro forma combined company after taking into account the Estimated Incremental Financial Impacts).

*Illustrative Abbott Cash EPS Accretion/(Dilution).* Guggenheim Securities reviewed the illustrative pro forma financial impact of the mergers on Abbott's projected Cash EPS for the fiscal years ending December 31, 2017 through December 31, 2020, utilizing the Abbott Analyst Forecast and Wall Street equity research estimates for St. Jude Medical, after taking into account Abbott's contemplated financing to be undertaken in connection with the mergers and the Estimated Incremental Financial Impacts. Based on the implied per share merger consideration of $85.00, this indicated that the mergers would be accretive to Abbott's projected Cash EPS in each of such fiscal years.

80.     These statements in the Registration Statement are rendered false and/or misleading by the omissions identified in ¶78 as this information is integral to shareholders' evaluation of the Merger Consideration, a portion of which is in the form of Abbott stock. Moreover, these projections were integral to the valuation analyses performed by Guggenheim and must be provided to shareholders in order for them to accurately assess the financial analyses performed.

81.     With respect to Guggenheim's *Illustrative Discounted Cash Flow ("DCF") Analysis* on page 67, the Registration Statement fails to disclose: (i) the terminal year unlevered free cash figure; and (ii) whether Guggenheim treated stock-based compensation as a cash or non-cash expense.

82.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 67 of the Registration Statement:

*Illustrative Discounted Cash Flow Analysis.* Guggenheim Securities performed an illustrative stand-alone discounted cash flow analysis of St. Jude Medical based on projected unlevered free cash flows (after deduction of

stock-based compensation) for St. Jude Medical and an estimate of its terminal/continuing value at the end of the projection horizon derived from the St. Jude Medical Forecast for the five-year period ending January 2, 2021. In performing its illustrative discounted cash flow analysis:

- Guggenheim Securities used a selected discount rate range of 7.05% to 8.45% based on an estimate of St. Jude Medical's weighted average cost of capital. St. Jude Medical's weighted average cost of capital was estimated based on, among other factors, (i) Guggenheim Securities' then-current estimate of the prospective US equity risk premium range of 6.00% to 7.00%, (ii) a review of St. Jude Medical's Bloomberg historical five-year average adjusted equity beta, its Bloomberg historical two-year average adjusted equity beta, its Bloomberg historical one-year average adjusted equity beta and its then-current Barra predicted equity beta (with a bias toward St. Jude Medical's Bloomberg historical average adjusted equity betas given an observed significant decline in Barra beta placing Barra beta measurably below Bloomberg historical average adjusted equity betas) as well as similar equity beta information for the St. Jude Medical selected companies, which resulted in a prospective unlevered equity beta reference range for St. Jude Medical of 0.850 to 0.950, (iii) the interpolated spot-market yield on the 20-year US Treasury bond of 2.35% as of April 26, 2016, as a proxy for the risk-free rate, (iv) St. Jude Medical's assumed target capital structure on a prospective basis and (v) Guggenheim Securities' investment banking and capital markets judgment and experience in valuing companies similar to St. Jude Medical.

- In calculating St. Jude Medical's terminal/continuing value for purposes of its discounted cash flow analysis, Guggenheim Securities utilized a two-stage terminal/continuing value methodology based on an illustrative reference range of perpetuity growth rates of St. Jude Medical's steady-state terminal year unlevered free cash flow of 1.0% to 2.0%.

- Guggenheim Securities' illustrative discounted cash flow analysis resulted in an overall reference range of approximately $74.00 to $114.00 per share for purposes of valuing St. Jude Medical common stock on a stand-alone intrinsic-value basis, as compared to the implied per share merger consideration of $85.00.

83.    The Registration Statement is false and/or misleading due to the omissions identified in ¶81 for a variety of reasons.  First, whether the Company recognizes stock-

based compensation in its estimate of after-tax free cash flows— thus treating stock-based compensation as a non-cash expense as opposed to a cash expense— could have a meaningful impact on the conclusions presented in Guggenheim's DCF Analysis.  Second, the terminal/continuing value has a large impact on a resulting DCF valuation.  Accordingly, St. Jude shareholders must be provided with the terminal year unlevered free cash flow that was utilized to derive the terminal/continuing value for the analysis.   Without the aforementioned omitted information, St. Jude shareholders cannot evaluate for themselves whether the analysis was performed properly and, in turn, determine what weight, if any, they should place on the analysis (and Guggenheim's Fairness Opinion as a whole) when deciding whether to vote to approve the Proposed Transaction.

84.     With respect to Guggenheim's *Selected Public Companies Analysis* on pages 64-65, the Registration Statement fails to disclose the basis for Guggenheim's selection of 2016 E Cash P/E and 2017E Cash P/E multiple ranges of 17.0x to 18.5x and 15.5x to 16.5x, respectively.

85.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 64-65 of the Registration Statement:

*Selected Public Companies Analysis.* Guggenheim Securities reviewed and analyzed St. Jude Medical's historical stock price performance, trading metrics and historical and forecasted financial performance compared to corresponding data for selected large cap publicly traded companies in the medical device industry that Guggenheim Securities deemed relevant for purposes of this analysis. The following publicly traded large cap interventional implant medical device companies with vascular and/or orthopedic product portfolios and market capitalizations in excess of $10 billion, collectively referred to as the St. Jude Medical selected

companies, were selected by Guggenheim Securities for purposes of this analysis:

### St. Jude Medical Selected Companies

- Abbott Laboratories

- Becton, Dickinson and Company

- Boston Scientific Corporation

- C.R. Bard, Inc.

- Johnson & Johnson

- Medtronic Public Limited Company

- Smith & Nephew plc

- Stryker Corporation

- Zimmer Biomet Holdings, Inc

Guggenheim Securities calculated, among other things, certain public market trading multiples and revenue and Cash EPS growth rates for the St. Jude Medical selected companies (based on Wall Street equity research estimates, including Wall Street equity research consensus estimates in the case of growth rates, each company's most recent publicly available financial filings and other publicly available information and, in the case of Abbott and Stryker Corporation, pro forma for the impact of certain recent acquisitions), which are summarized in the table below:

### St. Jude Medical Selected Companies Trading Multiples and Growth Rates

| | Cash P/E | | 2016E - 2017E Revenue Growth[1] | 2016E - 2018E Cash EPS Growth[1] |
|---|---|---|---|---|
| | 2016E | 2017E | | |
| **St. Jude Medical Selected Companies:** | | | | |
| Abbott Laboratories | 20.2x | 17.6x | 5.5% | 12.7% |
| Becton, Dickinson and Company | 18.3 | 16.4 | 4.4 | 11.3 |
| Boston Scientific Corporation | 18.8 | 16.5 | 4.9 | 12.5 |
| C.R. Bard, Inc. | 20.6 | 18.5 | 5.0 | 11.3 |

| | | | | |
|---|---|---|---|---|
| Johnson & Johnson | 17.1 | 16.1 | 4.6 | 6.0 |
| Medtronic Public Limited Company | 17.1 | 15.6 | 4.0 | 9.1 |
| Smith & Nephew plc | 19.1 | 17.4 | 5.0 | 11.1 |
| Stryker Corporation | 18.6 | 16.5 | 5.6 | 8.8 |
| Zimmer Biomet Holdings, Inc. | 14.6 | 13.3 | 3.0 | 10.3 |
| | | | | |
| Statistical Recap: | | | | |
|   Mean | 18.3x | 16.4x | 4.7% | 10.4% |
|   Median | 18.6 | 16.5 | 4.9 | 11.1 |
|   High | 20.6 | 18.5 | 5.6 | 12.7 |
|   Low | 14.6 | 13.3 | 3.0 | 6.0 |
| | | | | |
| **St. Jude Medical:** | | | | |
|   **Trading Basis** | | | | |
|     **St. Jude Medical Forecast** | **14.6x** | **13.0x** | **9.4%** | **12.0%** |
|     **Wall Street Equity Research** | | | | |
|     **Estimates** | **14.7** | **13.5** | **4.2** | **8.4** |
|   **Merger Basis ($85.00)** | | | | |
|     **St. Jude Medical Forecast** | **20.6x** | **18.4x** | | |
|     **Wall Street Equity Research** | | | | |
|     **Estimates** | **20.8** | **19.1** | | |

(1) Shown for informational purposes.

In performing its selected public companies analysis of St. Jude Medical, Guggenheim Securities selected reference ranges of trading multiples for purposes of valuing St. Jude Medical on a stand-alone public market trading basis as follows: (i) a 2016E Cash P/E multiple range of 17.0x to 18.5x, which implied a reference range of approximately $70.00 to $76.50 per share of St. Jude Medical common stock, and (ii) a 2017E Cash P/E multiple range of 15.5x to 16.5x, which implied a reference range of approximately $71.50 to $76.00 per share of St. Jude Medical common stock, as compared to the implied per share merger consideration of $85.00.

86.    These statements in the Registration Statement are rendered false and/or misleading by the omissions identified in ¶84 because such omissions are essential to shareholders' ability to properly evaluate the analysis performed by Guggenheim. Indeed, the selected reference ranges of trading multiples drives the resulting implied per share reference range resulting from the analysis. In sum, without the aforementioned information, shareholders' ability to understand Guggenheim's analysis is significantly limited, rendering

them unable to make a fully-informed decision whether to vote to approve the Proposed Transaction.

87.     With respect to Guggenheim's *Selected Precedent Transactions Analysis* on pages 65-66, the Registration Statement fails to disclose the basis for Guggenheim's selection of transaction enterprise value/NTM Adjusted EBITDA and NTM Cash P/E multiple ranges of 12.0x to 14.0x and 18.0x to 21.0x, respectively.

88.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 65-66 of the Registration Statement:

*Selected Precedent Transactions Analysis.*   Guggenheim Securities reviewed and analyzed financial metrics associated with selected precedent transactions announced since 2011 involving large cap target companies in the medical device industry that Guggenheim Securities deemed generally relevant for purposes of this analysis. The following precedent transactions announced since 2011 involving large cap target companies in the medical device industry with transaction values in excess of $5.0 billion, collectively referred to as the selected precedent transactions, were selected by Guggenheim Securities for purposes of this analysis:

### Selected Precedent Transactions

| Date Announced | Acquiror | Target Company |
|---|---|---|
| 10/5/14 | Becton, Dickinson and Company | CareFusion Corporation |
| 6/15/14 | Medtronic, Inc. | Covidien plc |
| 4/24/14 | Zimmer Holdings, Inc. | Biomet, Inc. |
| 5/27/13 | Valeant Pharmaceuticals International, Inc. | Bausch + Lomb Holdings Incorporated |
| 7/13/11 | Apax Partners | Kinetic Concepts, Inc. |
| 4/27/11 | Johnson & Johnson | Synthes, Inc. |

Guggenheim Securities calculated, among other things, certain implied change-of-control multiples and EBITDA and Cash EPS forward growth rates

for the selected precedent transactions (based on Wall Street equity research estimates, each company's most recent publicly available financial filings and other publicly available information), which are summarized in the table below:

**Selected Precedent Transactions Multiples and Growth Rates**

| Target Company | Transaction Value as Multiple of NTM EBITDA | EBITDA Fwd. Growth[2] | NTM Cash P/E | Cash EPS Fwd. Growth[2] |
|---|---|---|---|---|
| CareFusion Corporation | 11.9x | 8.1% | 21.1x | 11.8% |
| Covidien plc | 14.9 | 6.6 | 21.6 | 11.9 |
| Biomet, Inc.[5] | 11.2 | 4.5 | 17.0 | 12.2 |
| Bausch + Lomb Holdings Incorporated | 11.8 | 7.0 | 17.1 | 14.9 |
| Kinetic Concepts, Inc. | 8.8 | 5.1 | 13.0 | 8.7 |
| Synthes, Inc. | 11.1 | 7.4 | 20.5 | 7.6 |
| Statistical Recap: | | | | |
| Mean | 11.6x | 6.5% | 18.4x | 11.2% |
| Median | 11.5 | 6.8 | 18.8 | 11.8 |
| High | 14.9 | 8.1 | 21.6 | 14.9 |
| Low | 8.8 | 4.5 | 13.0 | 7.6 |
| **St. Jude Medical at Implied Per Share Merger Consideration** | **16.9x**[1] | **8.8%**[3][4] | **20.6x** | **12.0%**[3] |

(1) Reflects transaction value as a multiple of NTM Adjusted EBITDA.
(2) Forward EBITDA and Cash EPS growth rates from calendar year to calendar year + 2. Shown for informational purposes.
(3) Reflects calendar year 2016 to calendar year 2018 estimated CAGR.
(4) Reflects Adjusted EBITDA forward growth rate.
(5) NTM EBITDA and Cash P/E multiples calculated using annualized third quarter fiscal year 2015 statistics.

     In performing its selected precedent transactions analysis of St. Jude Medical, Guggenheim Securities selected a reference range of transaction multiples for purposes of valuing St. Jude Medical on a change-of-control basis as follows: (i) a transaction enterprise value/NTM Adjusted EBITDA multiple range of 12.0x to 14.0x, which implied a reference range of approximately $55.50 to $67.50 per share of St. Jude Medical common stock, and (ii) an NTM Cash P/E multiple range of 18.0x to 21.0x, which implied a reference range of approximately $74.50 to $86.50 per share of St. Jude

Medical common stock, as compared to the implied per share merger consideration of $85.00.

89.     These statements in the Registration Statement are rendered false and/or misleading by the omissions identified in ¶87 because such omissions are essential to shareholders' ability to properly evaluate the analysis performed by Guggenheim.  Indeed, the selected reference ranges of transaction multiples drives the resulting implied per share reference range resulting from the analysis.  In sum, without the aforementioned information, shareholders' ability to understand Guggenheim's analysis is significantly limited, rendering them unable to make a fully-informed decision whether to vote to approve the Proposed Transaction.

90.     With respect to Guggenheim's *Illustrative DCF Analysis* for Abbott on pages 69-70, the Registration Statement fails to disclose: (i) the projected unlevered free cash flows for Abbott and estimate of its terminal/continuing value at the end of the projection horizon derived from the Abbott Analyst Forecast for the five-year period ending December 31, 2020; and (ii) the stock-based compensation figures that were deducted to arrive at the unlevered free cash flow figures.

91.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 69-70 of the Registration Statement:

*Illustrative Discounted Cash Flow Analysis.*   Guggenheim Securities performed an illustrative stand-alone discounted cash flow analysis of Abbott based on projected unlevered free cash flows (after deduction of stock-based compensation) for Abbott and an estimate of its terminal/continuing value at the end of the projection horizon derived from the Abbott Analyst Forecast for

the five-year period ending December 31, 2020. In performing its illustrative
discounted cash flow analysis:

- Guggenheim Securities used a selected discount rate range of
7.00% to 8.40% based on an estimate of Abbott's weighted average
cost of capital. Abbott's weighted average cost of capital was
estimated based on, among other factors, (i) Guggenheim
Securities' then-current estimate of the prospective US equity risk
premium range of 6.00% to 7.00%, (ii) a review of Abbott's
Bloomberg historical two-year average adjusted equity beta, its
Bloomberg historical one-year average adjusted equity beta and its
then-current Barra predicted equity beta as well as similar equity
beta information for the Abbott selected companies, which resulted
in a prospective unlevered equity beta reference range for Abbott of
0.850 to 0.950, (iii) the interpolated spot-market yield on the 20-
year US Treasury bond of 2.35% as of April 26, 2016, as a proxy
for the risk-free rate, (iv) Abbott's assumed target capital structure
on a prospective basis and (v) Guggenheim Securities' investment
banking and capital markets judgment and experience in valuing
companies similar to Abbott.

- In calculating Abbott's terminal/continuing value for purposes of its
discounted cash flow analysis, Guggenheim Securities used an
illustrative reference range of perpetuity growth rates of Abbott's
terminal year unlevered free cash flow of 2.0% to 3.0%.

- Guggenheim Securities' illustrative discounted cash flow analysis
resulted in an overall reference range of approximately $40.00 to
$65.00 per share for purposes of valuing Abbott common stock on a
stand-alone intrinsic-value basis, as compared to Abbott's closing
stock price on April 26, 2016 of $43.88 per share.

92.    The Registration Statement is false and/or misleading due to the omissions

identified in ¶90 for a variety of reasons.  First, the projected free cash flows are the key

input of the DCF analysis and the terminal/continuing value has a large impact on a resulting

DCF valuation.  Accordingly, St. Jude shareholders must be provided with both Abbott's

projected unlevered free cash flows and estimate of its terminal/continuing value at the end

of the projection horizon.  Second, Guggenheim deducted stock-based compensation to

derive the unlevered free cash flows utilized in the analysis and shareholders must be provided with the stock based compensation figures in order to gauge the impact this deduction had on the analysis.  Without the aforementioned omitted information, St. Jude shareholders cannot evaluate for themselves whether the analysis was performed properly and, in turn, determine what weight, if any, they should place on the analysis (and Guggenheim's Fairness Opinion as a whole) when deciding whether to vote to approve the Proposed Transaction.

93.     With respect to the sales process that led to the Proposed Transaction, the *Background of the Mergers* section contained on pages 48-53 of the Registration Statement is materially deficient in that it fails to disclose:

(a)     The specific potential strategic alternatives considered by the Board at its December 29, 2015 and February 19, 2016 meetings;

(b)     The highly problematic provisions included in the draft merger agreements distributed to the Company by Abbott on April 6, 2016, including the size of the proposed termination fee included in this draft merger agreement; and

(c)     The rationale for the Board approving cash gross-up payments to certain Company executives, including St. Jude's named executive officers, to cover any excise tax resulting from the Proposed Transaction.

94.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 49-50 of the Registration Statement:

On December 29, 2015, the St. Jude Medical board of directors held a telephonic meeting to discuss further St. Jude Medical's 2016 annual operating plan. Representatives of St. Jude Medical's management team were present. During this meeting, management relayed to the St. Jude Medical board of directors that Mr. White had indicated an interest in discussing a potential business combination between Abbott and St. Jude Medical at the December 15, 2015 meeting regarding the companies' ongoing strategic marketing alliance. In anticipation of the upcoming February 19, 2016 St. Jude Medical board meeting, at which Guggenheim Securities, St. Jude Medical's financial advisor, was scheduled to meet with the board in connection with its annual review of strategic matters and trends within the medical technology sector, the board members and management determined to request that Guggenheim Securities also provide the board with certain financial information pertaining to St. Jude Medical and Abbott and discuss potential strategic alternatives in the event that Abbott presented a proposal regarding a possible business combination.

\* \* \*

On February 19, 2016, the St. Jude Medical board of directors held a regularly scheduled meeting. In addition to the members of the board, members of St. Jude Medical's management and representatives of Guggenheim Securities and Gibson, Dunn & Crutcher LLP, St. Jude Medical's outside legal advisor, were present for portions of the meeting. At that meeting, Guggenheim Securities discussed with the St. Jude Medical board certain strategic matters and trends within the medical technology sector, including investment, acquisition and consolidation trends. At the request of St. Jude Medical's board and management, Guggenheim Securities also provided certain financial information pertaining to St. Jude Medical and Abbott and discussed potential strategic alternatives to inform the St. Jude Medical board in the event that Abbott were to present a business combination proposal. The St. Jude Medical board discussed St. Jude Medical's potential strategic options, including continuing to execute on its standalone business plan, potential acquisitions, potential divestitures and potential business combinations. The St. Jude Medical board also discussed whether, in the event it were to receive a proposal from Abbott and determine to engage in a sale process, it should solicit other proposals and the potential benefits and risks inherent in contacting other potential buyers. The St. Jude Medical board considered, with input from St. Jude Medical's management and Guggenheim Securities based on their information about the industry, parties that could potentially have the financial resources and strategic interest to pursue a business combination with St. Jude Medical and the likelihood that any of such parties would be able to acquire St. Jude Medical on attractive terms. After such discussion, the St. Jude Medical board concluded that, in the event it were to determine to engage in a sale process, it was unlikely that there would be any companies

other than Abbott that would have both the strategic interest and financial resources to acquire St. Jude Medical on attractive terms. The St. Jude Medical board also took into account that, in the event it were to determine to enter into a sale process, the terms of any transaction agreement would not preclude another company from making a competing offer for St. Jude Medical.

(b)     from page 51 of the Registration Statement:

On April 6, 2016, Wachtell Lipton, on behalf of Abbott, distributed to Gibson Dunn, on behalf of St. Jude Medical, an initial draft of the merger agreement. The draft merger agreement contained a number of provisions that St. Jude Medical viewed as highly problematic, including Abbott's initial proposals regarding a number of provisions that would allow Abbott to terminate its obligation to complete the transaction in various circumstances and the size of its proposed termination fee in the event of termination of the merger agreement following a change in recommendation by the St. Jude Medical board of directors and certain other circumstances.

(c)     from pages 52-3 of the Registration Statement:

On April 27, 2016, the St. Jude Medical board held a telephonic meeting to consider and discuss the proposed transaction. Representatives of St. Jude Medical's management team, Guggenheim Securities and Gibson Dunn were present. Gibson Dunn reviewed and discussed with the St. Jude Medical board the final terms of the proposed merger agreement, as well as the fiduciary duties of directors in connection with their consideration of the transaction. Also at this meeting, Guggenheim Securities reviewed with the St. Jude Medical board of directors Guggenheim Securities' financial analysis of the per share merger consideration and rendered an oral opinion, confirmed by delivery of a written opinion dated April 27, 2016, to the St. Jude Medical board of directors to the effect that, as of that date and based on and subject to the matters considered, the procedures followed, the assumptions made and various limitations of and qualifications to the review undertaken, the per share merger consideration to be received in the first merger by holders of St. Jude Medical common stock was fair, from a financial point of view, to such holders. Following the discussion, the St. Jude Medical board unanimously determined that the mergers are fair to, and in the best interests of, St. Jude Medical and its shareholders and declared the merger agreement and the mergers advisable, approved the merger agreement and the transactions contemplated thereby, including the mergers, and resolved to recommend the adoption of the merger agreement to St. Jude Medical shareholders. The St. Jude Medical board also unanimously determined that it is fair and reasonable and in the best interests of its shareholders to approve cash gross-up payments to certain executives, including the named executive

officers of St. Jude Medical, to cover any excise tax that results solely in connection with the mergers.

95.     The Registration Statement is false and/or misleading due to the omissions identified in ¶93 because it gives shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction and the rationale of the Board in approving self-interested tax benefits.  Without this omitted information, St. Jude shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction.

96.     Defendants' failure to provide St. Jude shareholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the shareholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Defendants**

97.     Plaintiff brings this Exchange Act claim on behalf of himself and the Class.

98.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

99.     Individually and in concert, the defendants disseminated the false and misleading Registration Statement specified above, which contained statements that, in violation of Section 14(a) and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary in order to make the statements therein not materially false or misleading.

100.    The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement.

88.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

89.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information

made available in the Registration Statement and in other information reasonably available to shareholders.

90.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

91.     Because of the false and misleading statements in the Registration Statement, Plaintiff and other St. Jude shareholders are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### On Behalf of Plaintiff and the Class for Violations of §20(a) of the Exchange Act Against the Individual Defendants

92.     Plaintiff brings this Exchange Act claim on behalf of himself and the Class.

93.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of St. Jude within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of St. Jude and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

95.     Each of the Individual Defendants as controlling persons of St. Jude was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

96.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

97.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

98.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are jointly and severally liable to Plaintiff pursuant to Section 20(a) of the Exchange Act.

Plaintiff has no adequate remedy at law.

## COUNT III

### Claim against the Individual Defendants and St. Jude
### Pursuant to Minn. Stat.§§ 80A.68 and 80A.76

99.     Plaintiff repeats and realleges each and every allegation set forth herein, except to the extent any of the above allegations contain any facts that are unnecessary or irrelevant for purposes of stating a claim for violations of Minn. Stat. §§ 80A.68 and 80A.76.

100.    Pursuant to Minn. Stat. § 80A.68, it is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:

(a)     to employ a device, scheme, or artifice to defraud;

(b)     to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make a statement made, in the light of the circumstances under which it is made, not misleading; or

(c)     to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

101.    By engaging in the conduct described herein, the Individual Defendants and St. Jude violated, or propose to violate, Minn. Stat. § 80A.68, in that said defendants, in connection with the Proposed Transaction:

(a)     have employed or continue or propose to employ a device, scheme, or artifice to defraud;

(b)     have made or continue or propose to make untrue statements of material fact or to omit to state material facts necessary in order to make the statements made or to be made, in the light of the circumstances under which there were or are to be made, not misleading; or

(c)      have engaged or continue or propose to engage in acts, practices, or a course of business that operate or would operate as a fraud or deceit upon St. Jude shareholders for which conduct said defendants are liable to Plaintiff and other Class members pursuant to Minn. Stat. § 80A.76.

102.    St. Jude is an issuer and seller of the interests now held by Plaintiff and other Class members as described herein and, accordingly, is liable to Plaintiff and other Class members pursuant to Minn. Stat. §§ 80A.68 and 80A.76(b) for having engaged, or proposing to engage, in conduct prohibited by § 80A.68.

103.    Pursuant to Minn. Stat. § 80A.76(g)(1), the Individual Defendants, directly and indirectly, control St. Jude, a person liable under Minn. Stat. § 80A.76(b) for its violations of Minn. Stat. § 80A.68, and are, therefore, liable to Plaintiff and other Class members unless said defendants sustain the burden of proof that they did not know, and in the exercise of reasonable care could not have known, of the existence of the conduct alleged herein by reason of which their liability is alleged to exist.

104.    Pursuant to Minn. Stat. § 80A.76(g)(2), the Individual Defendants are directors of St. Jude, a person liable under Minn. Stat. § 80A.76(b) for its violations of Minn. Stat. § 80A.68, and are, therefore, liable to Plaintiff and other Class members unless said defendants sustain the burden of proof that they did not know, and in the exercise of reasonable care could not have known, of the existence of the conduct alleged herein by reason of which their liability is alleged to exist.

105.    This action was begun within the period prescribed pursuant to Minn. Stat. § 80A.76(j)(2) in connection with the Proposed Transaction.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.      Declaring this action to be a properly maintainable as a class action;

B.      Declaring that defendants herein, and each of them, have violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

C.      Preliminarily and permanently enjoining defendants and all those acting in concert with them from consummating the Proposed Transaction until the Company and the Individual Defendants disclose all material information regarding the Proposed Transaction;

D.      In the event that the Proposed Transaction is consummated, rescinding it or awarding actual and punitive damages to Plaintiff and the Class;

E.      Implementation of a constructive trust, in favor of Plaintiff, upon any benefits improperly received by defendants as a result of their wrongful conduct;

F.      Awarding Plaintiff fees and expenses in connection with this litigation, including reasonable attorneys' and experts' fees and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED: June 30, 2016                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

                                        s/ Gregg M. Fishbein
                                        Gregg M. Fishbein (#202009)
                                        Kate M. Baxter-Kauf (# 392037)
                                        100 Washington Avenue South
                                        Suite 2200
                                        Minneapolis, Minnesota 55401
                                        Tel: (612) 339-6900
                                        Fax: (612) 339-0981
                                        gmfishbein@locklaw.com
                                        kmbaxter-kauf@locklaw.com

                                        *Counsel for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel.:  (212) 682-3025
Fax:  (212) 682-3010

*Counsel for Plaintiff*